IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Luis E. Prado-Sevilla**<br>*Plaintiff*<br>*v.*<br>**ECOLIFT CORPORATION,**<br>Corporation A, and Insurance Company B.<br>*Defendants* | CIVIL ACTION<br>Case No. 3:17-cv-1632<br><br>**TITLE VII** (EMPLOYMENT)<br>**CIVIL RIGHTS ACT OF 1964**<br>• Race/Color<br>**DISABILITY (ADA)**<br>**AGE (ADEA)**<br>**DISCRIMINATION**<br>    Demand for Jury Trial |

## **COMPLAINT**

### INTRODUCTION

1. Plaintiff Luis E Prado-Sevilla ("Prado"), brings this civil action pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act and the Age Discrimination in Employment Act, to remedy acts of unlawful employment discrimination perpetrated against him, by his former employer and defendant Ecolift Corporation.

2. Plaintiff Prado is an experienced aviation helper mechanic who is over forty (40) years of age, disabled because of a speech impediment and is of African (Black) descent. Prado was subjected to wrongful termination of employment by Ecolift Corporation on August 19, 2016.

3. His speech impediment (severe stuttering) was known to immediate supervisors and Ecolift management, who often picked on him because of his slow stuttering speech and choose to humiliate him with condescending remarks. At the time of his wrongful termination of employment, Prado was also the only Black employee of African descent working at Ecolift Corporation. He was well qualified for his position and had no recurring disciplinary problems.

4. In wanton disregards for the laws protecting disabled individuals like Prado from discriminatory employment practices, Ecolift Corporation selectively choose him for termination, because of his age, color/race and disability. Defendant Ecolift Corporation should be held accountable for unlawful workplace practices that led to Prado's wrongful termination of

1

employment. His employer had no legitimate business reason to terminate his employment, and the proffered given to him was not supported by the company's financial and marketing statements.

5. On or about December 2015, Ecolift's chief executive Ernesto Di Gregorio picked on the plaintiff because of his race, age and disability, mocking him and hinting he should not be working for his company, and instead plaintiff should be driving a public "AMA" bus. Di Gregorio often referred to the plaintiff as "negro" and once said plaintiff should be picking up "dog-bones".

6. Plaintiff respectfully asks this Court to find defendant's conduct in violation of Federal Antidiscrimination Laws, specifically Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 et seq.) and the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §12101 et. seq., codified 42 U.S.C. §§12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), and the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166). As well, as in violation of various corresponding Puerto Rico laws.

7. Defendants failed to treat the plaintiff in a non-discriminatory manner and created a hostile working environment for Prado, in violation of established laws. Plaintiff was mistreated by Ecolift's supervisors and things got worse after he complained to the Human Resources office.

8. Defendants violated plaintiff's rights under federal law protecting workers from discrimination on the basis of his age, race and disability. Defendants are jointly and severely liable for violating plaintiff's rights under Federal and Puerto Rico law. The plaintiff seeks his reinstatement, back pay and benefits, compensatory and punitive damages, and his attorney fees.

**JURISDICTION**

9. This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, and the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §12101 et. seq., codified 42 U.S.C. §§12112-12117

(amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), and the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166), and this Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from the same nucleus of operative facts as Plaintiff's federal claims.

10. Venue properly lies before this Court under 28 U.S.C. §1391(b) and 42 U.S.C. Section 2000e-5(f) (3), as plaintiff was employed by Ecolift Corporation to provide service in Puerto Rico. The plaintiff is a resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to his claims have occurred in this district. A substantial part of the events giving rise to this suit arose on the premises of Ecolift Corporation, located in the Commonwealth of Puerto Rico.  Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

11. Prior to filing this lawsuit, plaintiff filed a timely written charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), where he notified defendants and charged them with discrimination based on his race, age and disability. The charge placed defendants on notice of his claim under Federal employment discrimination statutes. See **Exhibits I.**

12. On February 24, 2017, EEOC issued a Notice of Right to Sue.  Prado has filed this civil action within 90 days of receipt of the notice. Accordingly, plaintiff exhausted administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed. See **Exhibit II**.

### PARTIES

13. Plaintiff Luis E. Prado-Sevilla ("Prado") is a citizen of Guaynabo, Puerto Rico and at all relevant times was employed by Ecolift Corporation in the Commonwealth of Puerto Rico. He is over forty (40) years of age and because of his speech impediment (severe stuttering) he is an "individual with a disability" within the meaning of 29 U.S.C. §705(20) (A). He is of African descent (black), resides in the judicial District of Puerto Rico, and was well qualified for the job.

14. Defendant Ecolift Corporation is a domestic *for-profit-corporation* registered with the Commonwealth of Puerto Rico's Department of State (Registration No. 103690). According to said records, Defendant's designated address is Aeropuerto Isla Grande 2-Sur, San Juan, PR 00936, with mailing address PO Box 9477, San Juan PR 00908, with registered agent Ernesto Di Gregorio, with same address and the telephone number (787) 723-3771. Sales exceed $3 Million.

15. Defendant Corporation A and Insurance Company B, are unknown defendants that may be called upon to respond for defendant's actions and will be identified during the discovery phase of the case, and promptly substituted in advance, prior to the Trial for the referenced case. Plaintiff reserves de right to amend the Complaint, if necessary, to include employer's supervisors and other legal entities that could be held vicariously liable for defendant's actions.

16. Defendants are employees, agents, supervisory personnel and were, at all times material to this complaint, acting in the course and scope of their employment. Defendants participated in and/or directed the unlawful violations alleged herein, or knew of the violations and failed to act to prevent them. All defendants are jointly liable for monetary damages alleged herein.

## FACTUAL ALLEGATIONS

17. The plaintiff worked as aviation helper mechanic for defendant Ecolift Corporation, after completing necessary federal and state licensing requirements. He began to work for the defendant on or about May 2014, and he completed his certification and training while at work. At time of termination, plaintiff was qualified for his job and hand no recurring discipline problems.

18. From the beginning, his Supervisor Nestor Lopez, selectively picked plaintiff Prado and frequently ordered Prado to perform Hangar cleaning errands. He was hostile towards plaintiff. At various times, Prado complained to Human Resources about the hostile treatment he was given by Supervisor Lopez, but Human Resources took no corrective action to protect the plaintiff.

19. Overtime work and pay was given to the younger employees, despite plaintiff's frequent request for overtime. Younger employees were often assigned to work indoors with A/C,

4

whereas Prado was often sent to work outside. At one point the plaintiff was selectively put to work outside the Hangar, fixing the company's garden. A task not assigned to the other employees.

20.     At some point between May and July 2015, the plaintiff went to Human Resource office to complain that he was not being put to work as a mechanic helper in the Hangar, and was mostly assigned to perform cleanup of the Hangar. He was subjected to disparate treatment and suffered retaliation from his supervisors, shortly after.

21.     While at work, plaintiff was treated differently than similarly situated employees. Often light-skinned and/or younger Ecolift employees outside Prado's protected group were sent to showcase company aircrafts at shopping centers and/or the Convention Center, while plaintiff Prado was not sent to those events, but instead told to stay back at Company's worksite.  At one point Prado, like others, volunteered to participate at an event to be held in the Convention Center, but management refused to take him.  Instead younger employees without speech impediment were chosen to attend on behalf of the company. He was perceived "undesirable" by management.  The photos taken of these events also demonstrate an apparent racist work environment at Ecolift.

22.     At one point, plaintiff Prado asked if he could be moved to another company department, but was told by management that he would be required to start from "zero" and earn less. Other employee requests were given, without management placing such discouraging excuse. During 2014, Prado asked to be moved to the avionic technician area (he had a license for) and was told by management that he could be transferred, but only if he accepted a reduced pay, without health benefits.  Instead, his employer hired two young employees for available positions.

23.     At some point, defendant's management also publicly ridiculed and humiliated the plaintiff because of his speech impediment/disability, by mocking him by asking for him to "text" his message to supervisors, because he often took too long to talk to them. At one time, Facility security supervisor Jose Alvarado made the same condescending remark, in the presence of Human Resources staff, and management failed to correct the situation on the spot.

24.     At some time in December 2015, company staff suffered a cut while working with some tools, as defendant's chief officer Ernesto Di Gregorio just happen to walk by. Di Gregorio turned toward Prado and proceeded to humiliate Prado by publicly telling the condescending comment that the plaintiff was only good for driving a public "AMA" bus and Prado should be tied like a dog and be given a "dog bone". The condescending comment was made in front of other employees, unjustifiably exposing the disabled plaintiff to public ridicule and severe humiliation.

25.     At some time in December 2015, or January 2016, plaintiff Prado approach Di Gregorio to thank him for the Christmas Bonus he received, and as plaintiff struggled to stutter the words, Di Gregorio looked and yelled "Queee?" to him, while mocking his speech disability.

26.     Defendant's chief executive Di Gregorio, often delegated managerial authority to his right-hand Xavier, who mocked Prado in front of other employees, by telling him to send his messages by "text".  This exposed plaintiff to a hostile work environment because of his disability.

27.     Plaintiff Prado was the only employee from the aviation mechanical staff to be put to work on the Hangar's garden, performing humiliating gardening tasks. As his coworkers looked on. Plaintiff was often used by management as the company's "handy-man", often assigning him to do worksite cleaning and maintenance, unrelated to his job description. On or about December 2015, the plaintiff was ordered to assist with removal of wood laden with termites, using a toxic venom in the interior of the air-conditioned section of the Hangar. This demonstrate his employer's disregard for plaintiff's health and his safety. Plaintiff was exclusively put to work on such tasks, until plaintiff finally voiced his concern to Human Resource. The hostile environment intensified.

28.     At one point during employment, the plaintiff was also subjected to a hostile work environment as the result of supervisor Cruz Amador, who is from the same country of origin as Di Gregorio, who physical assaulted Prado. The supervisor even challenged Prado to a fist fight. Prado refused. During staff meeting Amador often commented to others that he wanted to take Prado "out". Rumors surfaced that Amador often came to the worksite drunk and was hostile toward Prado. This was one of management's way of selectively prosecuting the plaintiff and

provoking him to attempt to exclude him from the workforce. Plaintiff Prado went to Human Resources office to discuss the situation, but management failed to take actions to prevent worksite harassment of Prado, because of his disability. Amador continued his conduct with impunity, looking for every opportunity to try to fire Prado. During summer of 2016, supervisor Wilbert Vega confirmed to Prado, that Amador had an "agenda" and was "looking" for a way to terminate Prado's employment.  Plaintiff was put on notice by management, he was targeted for termination.

29.     At some point between 2015 and 2016, a photo shooting was scheduled by Ecolift marketing manager Carlos Fronteras. Prado, like the rest of the employees, was told to dress for the occasion. Hundreds of photographs of company staff, at the worksite, were taken to be used for marketing purposes. Every Ecolift employee was shown on the photos used in social media and defendant's various presentations, with the exception of photos taken with Prado in it. The photos posted by defendant in its websites "ecoliftpr.com" and "ecoflight.com" fail to show Prado. At one time, an "American" aviation magazine came to take photos of the worksite, and Di Gregorio specifically asked Prado to stay away from the photoshoot, while other employees were photographed. Photos of defendant's aviation staff show younger light skinned employees. Over fifteen photos were taken with Prado in its, but none of these were ever used publicly by Ecolift. When plaintiff asked management, he was told Di Gregorio had given instructions not to use them.

30.     Di Gregorio often walked by the worksite and talk to other employees, but avoided Prado because of his speech impediment. Instead, Di Gregorio sent others to talk to Prado, to avoid having to deal with his speech impediment. At some point, a U.S. Helicopter magazine photographer came to the worksite, and Di Gregorio mocked the plaintiff by stating that the visitor could not understand Prado, given that Prado was "unable" to speak Spanish, much less English.

31.     At some point, a new "harness" department was opened by the employer, and the plaintiff volunteered because he had a license and experience, but instead two younger employees were chosen.  At times the plaintiff sought transfer to other company areas, but was denied, and younger employees with less experience were chosen by the employer. Prado was treated different.

7

32. Photos taken of the infamous Puerto Rico Health Department Helicopter at Ecolift Hangar, taken after Prado was terminated, demonstrate younger employees used to replace Prado.

33. Numerous newspaper reports have confirmed that the employer has sought and successfully obtained work fit for Prado's area of expertise. Contrary to employer's proffered reason for termination, new and existing clients continue to send Ecolift work, which could and should have been performed by Prado, had he not been unlawfully terminated by his employer.

34. Information has also publicly surfaced about possible ongoing federal investigation of his employer's involvement in government contracts, and unlawful activities. Said investigation and employer's need to "silence" thru legal means those involved in the repair of Puerto Rico Police FURA Helicopters, is a possible motive for his employer's discriminatory termination of employment. Plaintiff was one of the mechanics assigned to work on Police helicopters, under a government contract that has been put into question. All the while, new government contracts for other aircrafts have been assigned to defendant Ecolift. There has been no significant reduction of work for Prado's area or the need to significantly reduce the workforce, to justify his termination.

35. At the time of termination, the plaintiff was the only Black (African Descent) employee of defendant Ecolift Corporation. His employer was already aware and he was perceived by superiors and coworkers, as an individual with disability because of his speech impediment, which substantially difficult his communication and limits a major life activity, including work. At time of termination, plaintiff was over 40 years of age and also belong to a protected age group.

36. During employment at defendant Ecolift, the plaintiff had no serious and/or recurring performance or disciplinary problems. He was well qualified and met job's expectation.

37. On August 19, 2016, defendant Ecolift Corporation unlawfully terminated plaintiff's employment, under the pretext of an alleged reorganization, which never took place. Prado was offered a severance agreement which placed an unjustified burden on him, by requiring him not to perform the same work for a competing employer, supplier or client. Prado had no managerial authority nor had access to employer's secrets or clients, to justify such post-

employment restriction. Mainly, because his former employer made no effort to compensate Prado for accepting such a post-employment restriction, as prerequisite for accepting a miserly token of a severance pay. Prado refused to accept such detrimental terms which significantly limited his future employment opportunities. Said agreement also was used as a disguise by his employer, to obtained a legal document which could be used to "silence" the plaintiff during legal proceedings. Including perhaps, the ongoing federal investigation of the company, its officers and its contracts.

38.     Plaintiff Prado holds defendant Ecolift Corporation and its officer Di Gregorio, accountable for his unlawful discriminatory termination of employment based on: (1) Race, (2) Disability and (3) Age. Other similarly situated employees that were non-African, non-disabled and outside his protected age group, were allowed to keep their jobs at Ecolift Corporation.

39.     At various times during plaintiff's employment at defendant Ecolift Corporation, management voiced derogatory comments and remarks concerning Prado's disability and his race.

40.     Publicly available information confirms the employer was not undergoing any kind of significant financial hardship or decreasing work volume, to justify a reduction of its workforce, specifically in the mechanical service area.

41.     Younger less experienced and less qualified employees were hired by defendant, and others were allowed to continue to work for the company. Prado however, was not given any other option, but to accept his employer's unreasonable term of the severance agreement, and when he refused, he was unlawfully terminated by Ecolift Corporation on August 19, 2016. Aware his employer had violated the law, Prado refused to sign a confidential settlement agreement that also imposed unreasonable restrictions on his ability to work in the future for other employers.

42.     His former employer's proffered excuse to terminate his employment was a *pretext* for discrimination because of plaintiff's race, disability and his age. Plaintiff Prado can and will present before this Court a *prima facia* case of discrimination in the workplace because of his race, age and disability. The evidence will show and the Court will find defendant's conduct was discriminatory with respect to plaintiff's race, age and disability and treated Prado differently than

similarly situated employees outside of his protected class. The Court will also find the employer's excuse for his termination is *pretextual*.

## CAUSES OF ACTIONS

### COUNT I: DISCRIMINATION BECAUSE OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e. et seq.

43. The foregoing paragraphs are realleged and incorporated by reference herein.

44. The defendant's conduct as alleged at length herein constitutes discrimination based on *race* in violation of Title VII. The stated reasons for defendant's conduct were not the true reasons, but instead were *pretext* to hide defendant's discriminatory *animus*.

45. A *Caribbean Business* special advertising section paid by defendant Ecolift Corporation, published on Thursday August 25, 2016, shows a photo of Ecolift Corporation employees. Plaintiff Prado can be seen standing in the back, as the only African-American (African Descent) employee. Just before the multi-page advertorial representing Ecolift's alleged expansion was published, on August 19, 2016, plaintiff was terminated because there was "no work" for him or his area. This was false. Younger and/or light-skinned employees were hired shortly after, to perform Prado's work. His area of work continues to receive major work assignments to this day.

46. Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo"). It prohibits discrimination by employer based on an employee's *race*. 29 L.P.R.A. §146. Specifically, it also prohibits employers from taking adverse action against an employee because of his race and/or color, with regards to the terms and conditions of his employment, refusing to keep or reincorporate employee into his job, willful deprivation of employment and/or taking adverse actions that negatively affect employment status. It also creates a *presumption* against employer. In the above referenced case, the plaintiff belonged to a *protected class* of employees, he was black (African-descent), was well-qualified for his job, he was forced to work in a hostile

environment and wrongfully terminated from employment. Above referenced Act No. 100 exposes all defendants to criminal liability (felony) with a mandatory sentence of incarceration of (3) years.

**COUNT II: Violation of the Americans with Disabilities Act (42 U.S.C. §12101 et. seq.)**

47. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

48. The Americans with Disabilities Act, as amended, 42 U.S.C. §12101 et. seq., prohibits employers from discriminating against people with disabilities in employment, including failing to make reasonable accommodations to known limitations of otherwise qualified individuals with disabilities, unless the employer can demonstrate that the accommodation would impose an undue hardship. The Americans with Disabilities Act of 1990, as amended ("ADA"), also makes it illegal to discriminate against qualified persons with disabilities.

49. Defendant knew or had reason to know of Prado's speech impediment. As disability, his speech impediment affected his major life's activities, including communicating with others and his work. Prado often had to repeat and ask others be patience to understand him.

50. Prado's adverse employment actions include his unjustified wrongful termination of employment. Discrimination encompasses not only adverse actions motivated by prejudice, but also failing to make reasonable accommodation for a plaintiff's known disabilities. See Taylor, 184 F. 3d at 311; 42 U.S.C. §12112 (b) (5) (A) (1994). Prado's employer denied him the opportunity to continue to work, in spite of being qualified to work and having seniority at work. While others who were, younger and had less experience, who did not have a disability, were allowed to remain working for Ecolift Corporation.

51. Prado was able to perform the essential functions of his job, and was a qualified individual who had a disability during the period in question and reasonable accommodation should have been given to him to allow him to continue to work. Other employees without disability were allowed to remain working for Ecolift Corporation, yet he was terminated for no justifiable reason, other than to excluded him from the workplace because of his disability.

52. Defendant discriminated against Plaintiff on the basis of a perceived or actual *disability* and management failed to protect the plaintiff from discrimination, as required by ADA.

53. Defendants are jointly and severally liable.

## COUNT III: Violation of the Age Discrimination in Employment Act (29 U.S.C.A. §621 et. seq.)

54. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

55. Defendant discriminated against Plaintiff on the basis of his *age*.

56. The Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C.A. §621et. seq., makes it illegal to discriminate against qualified persons at work because of their age. Prado was over the age of forty (40) at the time of his wrongful termination of employment.

57. Other, younger company employees outside of Prado's protected age group, such as: (1) Yadiel, (2) Luis Rodriguez, (3) Angel Rivera, (4) Jonathan Gotai, (5) Johnathan Ferrer and (6) Ramon Cardona, were allowed to keep their employment with defendant Ecolift, whereas plaintiff Prado suffered adverse employment action when the employer unscrupulously terminated his employment. Some of these younger men began to work for Ecolift, after the plaintiff. The employer proffered reason is a pretext for unlawful discrimination. The plaintiff was terminated because of his age. Younger employees were allowed by defendant to continue working in the aviation mechanic department and other work areas. As a matter of fact, on the very week Prado was to be terminated, a younger employee name Johnathan was transferred/ordered to report to work in the aviation mechanic area, where plaintiff had worked.

58. Prado was substituted by younger employees at Ecolift Corporation, demonstrating Ecolift Corporation's proffered reason for termination is *pretextual* to conceal age discrimination. Younger employees were allowed to remain working for the employer and were also hired by Ecolift Corporation after Prado's wrongful termination of employment.

59. Younger employees outside of plaintiff's protected age group were also treated differently, and were allowed to perform plaintiff's assigned tasks after he was terminated.

60. Defendants are jointly and severally liable.

### COUNT IV: WRONGFUL TERMINATION

61. The foregoing paragraphs are realleged and incorporated by reference herein.

62. The defendant's conduct as alleged at length herein constitutes the wrongful termination of plaintiff's employment.  In the absence of a *justifiable cause*, the stated reasons for defendant's conduct were not the true reasons, but instead were a *pretext* to hide defendant's discriminatory *animus* to remove plaintiff from workplace because of his race, age and disability.

63. Shortly after Prado's employment was terminated, defendant continued hiring other employees, including a female employee for its accounting department.  Other employees were brought into the aviation mechanic department, to replace the plaintiff. Meanwhile, defendant continue to fulfill its services to multiple clients. Demonstrating the need for Prado's services.

64. As a matter of fact, a *Caribbean Business* Advertorial (special advertising section) was paid for and/or published by Ecolift Corporation, which depicts the company as a successfully enterprise.  No reference is made to the company undergoing any financial crisis or need to reduce its workforce. Company records filed with the Puerto Rico Department of State also makes no reference to the company's need to reduce its workforce.  See *Caribbean Business*, Special Advertising Section, pg. 44-45, Vol. 2, No. 33, Thursday, August 25, 2016.

65. In the present case, the plaintiff will show with preponderance of evidence that his wrongful termination was unjustified and the employer's alleged legitimate reason will be shown to be an "excuse" to justify unlawful conduct in violation of antidiscrimination laws.

66. Ecolift Corporation failed to observe seniority rules for termination and rehire. There was *no legitimate business reason to* justify Prado's selective termination of employment, all the while continues hiring employees outside of Prado's protected class, to work in his area.

13

67. Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without *just cause* in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a. By allowing a hostile work environment towards the plaintiff, the employer sought to eliminate the plaintiff. In this case, management choose to selectively discharge Prado, while proffering a pretextual excuse to justify his termination. There was no need to terminate his employment, all the while Ecolift Corporation continued to hire others outside of his protected class. The Court will find that Prado's termination of employment was not needed, nor justified.

68. Taken as a whole, plaintiff's evidence wills suffice to support a finding that defendants acted with reckless disregard to plaintiff's rights and a discriminatory *animus*.

**COUNT V: VIOLATION OF THE COMONWEALTH OF PUERTO RICO LAW**

69. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

70. Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without just cause in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a. Given his employer's subsequent hiring of new employees, and publicly available information which confirms the employer was not undergoing financial hardship, nor had the need for a significant reduction of its workforce, this was also a *pretext* for his unlawful termination.

71. Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo"). It prohibits discrimination by employer based on an employee's age. 29 L.P.R.A. §146. Specifically, it prohibits employers from taking adverse action against an employee because of his *age*, with regards to the terms and conditions of employment, refusing to keep or reincorporate employee into a job, willful deprivation of employment and/or taking adverse actions that negatively affect employment status. It also creates a *presumption* against the employer. In the above referenced case, the plaintiff belonged to a protected class of employees over 40 years of age, he was qualified for his job, was terminated and his tasks given to younger persons not protected by law.

72. Puerto Rico's Act No. 44, approved on July 2, 1985, as amended, best known as Puerto Rico's Employment Opportunity Act for Disabled Persons ("Ley de Prohibición de Discrimen contra Impedidos"), also prohibits discrimination on the basis of disability and requires employer to make reasonable accommodation. Act No. 44 specifically prohibits employers from limiting and/or excluding a person with disability from work based solely on his disability. Puerto Rico's Act No. 81, approved on July 27, 1996, ("Le de Igualdad de Empleo para Personas con Impedimentos"), also imposes a duty on the employer to make reasonable accommodation in the workplace. 29 L.P.R.A. §1401. In the above referenced case, the plaintiff was the subject of disparate treatment when his employer wrongfully terminated his employment, while others outside of this protected class were allowed to continue to work for Ecolift Corporation.

73. Defendants are jointly and severally liable.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

75. Defendant intentionally and negligently inflicted *serious emotional distress* on the Plaintiff. Defendant's conduct, as alleged herein, make them liable under Article 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142.

76. Defendant's actions and omissions, in violation of Federal and Commonwealth of Puerto Rico Laws were tortious and caused Plaintiff severe mental distress, anguish, humiliation, and shame, which should be compensated. He was forced to leave his gainful employment with a false sense of guilt, instilled by his former employer, and his boss' impunity. Defendant's conduct and omissions are the proximate cause of all damages complained of herein, in this Supplemental State Law Claim under Puerto Rico's Tort Statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendant's conduct was illegal and in violation of legal statutes herein identified, and that it grants Plaintiff the following remedies:

A. That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.
B. That this Honorable Court award Plaintiff reinstatement, back pay, all loss benefits, front pay and other equitable relief.
C. That this Honorable Court enjoins Defendant from engaging in additional discrimination and retaliation against Plaintiff, with the reinstatement.
D. That this Honorable Court award *compensatory and general damages* in the amount of **$1,500,000.00** against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy for the mental and emotional distress and discomfort that Plaintiff suffered, as provided by the law and statutes of the United States and the Commonwealth of Puerto Rico.
E. That this Honorable Court award exemplary and *punitive damages* in the amount of **$3,500,000.00** against all Defendants sued in their individual and/or representative capacities, or an amount to be determined at trial, in light of Defendants' willful, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiff's rights.
F. That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees.
G. Pre-judgment interest; and as indicated above, the Plaintiff seeks *compensatory* damages, *statutory* damages, *punitive* damages, *injunctive relieve* and any other relief this Court deems equitable, just and appropriate.

### JURY DEMAND

Plaintiff respectfully requests a *jury trial* on all issues triable to a jury.

In San Juan, Puerto Rico, on this 11th. Day of May 2017.

    Respectfully submitted,

    /S/ Humberto Cobo-Estrella, Esq.
    Humberto Cobo-Estrella, Esq.
    **USDC-PR230108**

    PO Box 366451
    San Juan, Puerto Rico 00936-6451
    Tel. (787) 200-2715
    Email: hcobo@hcounsel.com

## **CERTIFICATE OF SERVICE**

      I certify that on May 11, 2017, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing will be served upon all parties for whom counsel has not yet entered an appearance electronically.

                                              /S/ Humberto Cobo-Estrella, Esq.
                                                     *Attorney for the Plaintiff*